## ERROR IN IMPANNELING AND DISCHARGING JURIES.

### Circuit Court of Pike County.

### GUY H. DEITER v. THE STATE OF OHIO.

### Decided, May 19, 1909.

*Jurors Grand and Petit—Should be Drawn from the Wheel as Distinct Panels—Plea in Abatement—Sections 5165, 5169, 5170, 5171, 5172 and 5176—Discretion in the Discharge of Jurors.*

Assuming to act under Section 5165 of the Revised Statutes, the common pleas judge ordered thirty-five names to be drawn from the jury wheel to act as grand or petit jurors, without designation whether they should be grand or petit, or what number should constitute either, in his direction to the clerk. Thirty-four having appeared at the first day of the term the judge selected fifteen of said persons and directed the clerk to call them as grand jurors. This left the remaining nineteen as the regular petit panel. Later at the term the judge discharged the entire regular petit panel because it or they were "so interested in causes coming on further to be heard in this court, so as to disqualify them from sitting thereon," and ordered the new jury drawn to appear on the day the accused was tried. *Held:*

1. A court or judge, under Section 5165, Revised Statutes, has no authority to so exercise his personal selection of the entire grand jury panel in the manner stated. The order to the clerk should stipulate the number of each panel to be drawn; and the clerk should draw from the wheel the grand and petit juries as distinct panels.

2. A court has no authority to discharge the entire panel of the petit jury for the cause above stated; and it is an abuse of discretion so to do.

3. The irregularity in the selection of the grand jury, thus pursued, can not be attacked by plea in abatement.

*S. L. Patterson* and *C. H. Henkel,* for plaintiff in error.
*James A. Douglass,* Prosecuting Attorney, contra.

Guy H. Deiter was indicted for grand larceny. He excepted to the indictment by filing a verified plea in abatement which, among other facts, set forth that one of the judges of the Common Pleas Court of Pike County directed the clerk of said court to draw from the jury wheel in the presence of the sheriff, thirty-

five names of persons to serve as grand and petit jurors for the November term, 1908, of the court in said county, and to appear at 9 o'clock A. M., on November 16th, 1908, that being the first day of the term.  On November 5th, 1908, the deputy clerk drew thirty-five names from the wheel as directed and issued a venire facias to the sheriff commanding him to serve said persons to attend said court as jurors, either grand or petit, at the time named.  On the 7th of November the sheriff served all of the persons personally, except one who was out of the county.  On November 16th, 1908, the thirty-four persons so summoned as jurors appeared in court, *"and the judge of said court directed the clerk of said court to call certain persons of said venire selected by said judge of said court as grand jurors for said term and court. Thereupon the fifteen persons so selected were impanneled and sworn."*  The plea then alleges that the fifteen persons so selected after hearing a part of the evidence, considered the evidence and indicted the defendant, but before returning the indictment into court one of the members was excused for sickness and another substituted to fill the panel; that the substituted member did not hear all of the evidence submitted to the others, and that a part of the evidence was not re-submitted before the return of the indictment.

A demurrer was interposed to this plea by the state, on the ground that the plea did not state facts sufficient, etc.  The demurrer was sustained and the plea overruled.

The additional errors claimed are predicated upon the motion and challenge to the array of the petit jury, and upon oral motions, made in open court prior to its impanneling, which appear in the bill of exceptions.  It appears from the record that the regular petit jury impanneled for the term was discharged by the court for the reason as alleged in the entry, "that the present petit jury is so interested in causes coming on further to be heard in this court, so as to disqualify them from sitting thereon, it is ordered that said jury and the several jurors thereof, be, and they are hereby discharged from further service in this court."  It further appears that the court ordered that *"the petit jury heretofore selected by the court"* having been duly discharged, the clerk draw new names from the wheel to serve as a new petit jury for the term and cause them to be summoned to ap-

pear at court on December 30th, 1908, the time when defendant's case came on for trial.

Other motions were made to the court; a demand for the regular jury originally selected was made and overruled. A motion to set aside and challenging the array was made, based upon the action of the court in discharging the regular jury for the cause stated, and in impanneling the new petit jury. These motions were also overruled. A trial followed resulting in conviction.

JONES J.; CHERRINGTON, J., and WALTERS, J., concur.

The record might have stated the crucial facts in this case a little more succinctly. As admitted by counsel on both sides, the facts briefly stated are as follows:

The judge ordered thirty-five names to be drawn from the jury wheel to act as grand or petit jurors, without designation whether they should be grand or petit, or what number should constitute either, in his direction to the clerk. Thirty-four having appeared at the first day of the term, he selected fifteen of the said persons, and directed the clerk to call them as grand jurors. This left the remaining nineteen as the regular petit panel. Later at the term he discharged the entire regular petit panel because it or they were "so interested in causes" to be heard, and ordered a new jury drawn to appear on the day the accused was tried.

Plaintiff in error claims a number of errors were committed, but, with the exception of two, we consider them irregularities merely, and not substantial errors. The vital questions in this case, as we view them, relate to the method employed in the impanneling of the grand and petit juries. Broadly speaking, we recognize the well known legal principle that irregularities in the impanneling of juries, which do not affect the substantial rights of the accused, will not be considered on review; that the method of their selection concerns the public rather than the parties. But it does not follow that the power of the court or judge transcends the law relating to their selection. The method employed in the case at bar, if adopted in practice, would sap at the foundations of our jury system. It is autocratic in that it would invest the trial judge with almost unlimited power in the construction of petit and grand juries. It is not denied but

that the state may confer such power as it pleases in the method of selection, having regard only to the constitutional guarantee of a trial by an impartial jury. The method employed affects not only the accused who was on trial, but the entire body politic. And we can not more aptly state our views in that regard than by adopting the language of the learned judge, in *State* v. *Barlow*, 70 O. S., 379, wherein he says:

"The right of everyone accused of crime to a fair trial should be secured to him, and this court, as in the past, will insist upon this, but we do not incline to search for unsubstantial errors, or to give undue effect to them when discovered by others."

1. In our judgment Section 5165 requires the court or judge, in his order to the clerk, to cause any number of persons to be summoned as *grand or petit jurors,* to specify in his order the number of grand and petit jurors, respectively, that is to be drawn from the wheel. The requirement of the section, "to be summoned to serve as grand or petit jurors," taken in connection with the cognate sections immediately following, must be construed to mean that the direction should be, to cause them to be summoned to serve as *grand* jurors, or to be summoned as *petit* jurors as the case may be. The section further provides that grand and petit juries shall be impanneled from persons *"so selected and summoned as aforesaid."*

Sections 5169, 5170 and 5171 recognize the fact of separate bodies as drawn from the wheel. By the first the summons is issued for the person drawn as grand or petit juror *"as the case may be";* the second by its provision that "if any person selected as grand or petit juror, as aforesaid, be not summoned" equally recognizes the distinction between the two bodies. Section 5171 provides, if there be a deficiency in the grand jury, that the court may issue a venire for talesman to supply the deficiency.

The statute does not even impliedly authorize the court arbitrarily to select these two juries any more than it does the clerk. The care by which the Legislature has attempted to safeguard the wheel and its contents, and by providing the uniformity of pieces of paper upon which the names are written and their thorough admixture before drawing, indicates that, to the wheel and not to the court or judge, is confined the impartiality of selection of the grand and petit juries. The order directed to the clerk should state the number of each desired to be selected, or a separate writ

might issue for each panel; and the clerk should draw each panel as a distinct panel. So far as we know, this is the universal custom employed by the common pleas judges in this circuit. And while this fact does not determine its validity, it serves to show the construction these judges give the law.

2.  Much of what has been said of the method employed in the selection of the grand jury would apply to the selection of the petit jury, if those facts were fully incorporated in the bill in support of the challenge to the array of the petit jury. The action of the court in selecting certain persons from the whole list to serve as a grand jury, was tantamount to the selection of the regular petit jury. The remaining nineteen persons necessarily became the regular petit jury.

However, there is further reason why the challenge to the array should have been sustained. Section 7276, Revised Statutes, provides that the jury, summoned and impanneled according to the provisions of law relating to the summoning and impanneling of juries in other cases, shall try the accused. The court, two days before the trial of the accused, discharged the entire regular panel, for the ostensible reason as shown by its journal, that it was so interested in causes coming on further to be heard as to disqualify them from sitting thereon. The action of the court in this regard is sought to be upheld by Section 5172, which provides that if, *"from any cause,"* it becomes necessary to have a new petit jury or members to filll up the regular panel, the court may order the names of the number of jurors required for the new petit jury, etc. The cause mentioned in that section not only includes one of the causes of excuse granted by such Sections as 5179 and 5180, but would no doubt include any other personal cause addressed to the wise discretion of the court. It does not include the interest of the juror or panel in pending criminal causes coming on to be heard, for the reason that such are especially provided for by other sections of the code, in the examinations of the juror on voir dire.

Section 7279 provides that challenges for cause shall be tried by the court, on the oath of the person challenged, or on other evidence. Challenge pertaining to interest or partiality of the juror is made and disposed of by Section 7278. We are not disposed to deny a wide discretion in the court in the discharge

of jurors, but to discharge the entire regular jury, consisting presumably of nineteen persons, and prejudging their qualifications to sit as shown by the journal entry, appears to us as an abuse of discretion. If the first panel could be thus discharged, the succeeding one could also be, and thus *ad libitum* until a satisfactory jury could be obtained.

This would furnish opportunity for dictatorial conduct, if the practice were indulged in. It would be entirely feasible, following the methods employed, to construct a grand jury of the same political complexion, or committed wholly to a "wet" or "dry" sentiment; and if the culling of the original list of jurors left a petit jury unsatisfactory to the court because of political or other bias, the residuum could be discharged and a new jury obtained. The Legislature has wisely provided a nonpartizan commission for the selection of "judicious and discreet persons having the qualifications of electors," whose names are placed in the wheel for jury duty, and we do not think it wise, in the construction of these jury statutes, to uphold a construction that would furnish opportunity to nullify, in a measure, the intendment of the Legislature and the action of the jury commissioners.

Had the journal entry merely recited that the jury was excused, without assigning the cause for their general disqualifications, it would be presumed that there were proper reasons for their discharge and that discretion had not been abused. In the cases cited to us bearing upon this question, in none of them appears such drastic action in discharging the jury as disclosed here.

3. The other question presented is, whether the method employed in the selection of the grand jury can be presented by a plea in abatement. Section 5175 provides that when the grand or petit jury has not been drawn or summoned as prescribed by law, that the objection may be made by challenge to the array. Inasmuch as the plea in abatement did not question the legal qualifications of any of the individual members of the grand jury irregularly selected, we are constrained by judicial authority in this state to hold that the irregularities should have been attacked by challenge and not by plea in abatement. *Huling* v. *State*, 17 O. S., 583; *Lindsay* v. *State*, 24 C. C., 1; *Blair* v. *State*, 5 C. C., 496; *State* v. *Easter*, 30 O. S., 542 and 549.

The court below erred in its discharge of the regular petit jury for the cause stated, and should have sustained the challenge to the array. The judgment of conviction will be reversed, with costs, and cause remanded to the court of common pleas for a new trial.